UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-20420
Summary Calendar
_____

IN THE MATTER OF:  JERALD W. LOWRY;
SHARON L. LOWRY,

Debtors.

_____

JERALD W. LOWRY,

Appellant,

versus

SEABOARD SURETY COMPANY,

Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-94-1267)
_____
October 5, 1995

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[1]

    Jerald W. Lowry appeals the district court's judgment
affirming the bankruptcy court's denial of discharge pursuant to 11
U.S.C. § 727(a)(2)(A).  We **AFFIRM**.

I.

_____

[1]    Local Rule 47.5.1 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that rule, the court has determined that this opinion
should not be published.

In 1991, Seaboard Surety Company filed suit in federal court in Texas against Lowry and his wife, claiming $2,591,000 under an indemnity agreement. By letter on July 24, 1991, the Lowrys offered Seaboard $50,000 in settlement (half in cash, with the remainder in the form of a judgment which could not be executed upon for one year). With that offer, they furnished their sworn financial statement, dated July 1, 1991, reflecting that they had $211,000 in equity in real property in Colorado, and owned stock worth $41,560. Previously, the Lowrys had furnished Seaboard with copies of their income tax returns for 1987-90. The letter containing the settlement offer purported to restrict the use of financial information for settlement purposes only, and stated that the Colorado property was on the market, with "a large portion of the proceeds to be used to hopefully pay a settlement with Seaboard and other creditors".

On August 30, 1991, Seaboard obtained a judgment against the Lowrys for $2,591,000, plus attorney's fees, court costs, and interest.[2] The Lowrys appealed to this court. (As discussed *infra*, the judgment was affirmed on April 30, 1992.)

On October 31, 1991, two months after Seaboard obtained its judgment, the Lowrys received $211,800 from the sale of the Colorado property. They neither provided Seaboard with an updated financial statement nor informed Seaboard of the sale. That November, Seaboard rejected the Lowrys' $50,000 settlement offer,

---

[2] Seaboard abstracted the judgment in Texas, but not in Colorado, despite knowing that the Lowrys owned property there.

on the ground that it was insufficient in light of the assets reflected on the Lowrys' financial statement.

That December, the Lowrys offered Seaboard $100,000 in settlement. By that time, they had spent nearly $100,000 of the proceeds from the sale of the Colorado property; but they did not inform Seaboard of either the sale or the disposition of nearly half the proceeds from it. The letter containing that offer referred to the Lowrys' financial statement that had been provided to Seaboard with the initial settlement offer. Seaboard rejected the second settlement offer in January 1992, based on the financial information previously provided by the Lowrys. (Seaboard's attorney testified at the subsequent adversary proceeding that Seaboard would have evaluated the Lowrys' settlement offers differently had it known that they had sold the Colorado property and spent nearly half the proceeds.)

On April 30, 1992, our court affirmed the judgment in favor of Seaboard. Two weeks later, the Lowrys filed a petition for relief under Chapter 7 of the Bankruptcy Code.[3] During the three months preceding the filing of the petition, they reduced the mortgage lien on their homestead by over $80,000 (over $43,000 of which came from the proceeds of the sale of the Colorado property) and paid off all of their unsecured creditors except Seaboard.[4]

---

[3] The Lowrys first consulted an attorney about bankruptcy in March 1992.

[4] The proceeds from the sale of the Colorado property were used to pay off a $62,800 promissory at Post Oak Bank on November 13, 1991; purchase an $18,000 automobile on November 19, 1991; replace $5,000 withdrawn from an individual retirement account on November

Seaboard objected to the Lowrys' discharge, asserting that they had transferred property with the intent to hinder or delay Seaboard in collecting its judgment.  The bankruptcy court denied Lowry a discharge, on the ground that he had transferred property within one year before filing bankruptcy, with the intent to hinder or delay Seaboard; but, it granted his wife's discharge.  The district court affirmed the judgment of the bankruptcy court.

## II.

Lowry concedes that he transferred property; he contends that the evidence is insufficient to prove that the transfer was with the actual intent to hinder or delay Seaboard in collecting its judgment against him.  The bankruptcy court denied Lowry's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), which provides in relevant part that a debtor shall be granted a discharge unless

> (2)  the debtor, with intent to hinder, delay, or
>      defraud a creditor ... has transferred,
>      removed, destroyed, mutilated or concealed ...
>
> (A)  property of the debtor, within one year
>      before the date of the filing of the
>      petition ....

11 U.S.C. § 727(a)(2)(A).

"The finding of intent to hinder, delay, or defraud a creditor is a factual one which must be reviewed under the clear error standard."  ***Hibernia Nat'l Bank v. Perez (Matter of Perez)***, 954

---

25, 1991; pay approximately $45,000 to reduce the mortgage on the Lowrys' homestead in February and March 1992; pay $12,000 for college-related expenses of the Lowrys' son in January, February, and April 1992; and pay $25,000 to the IRS for capital gains tax on the proceeds from the sale of the Colorado property.  The remainder of the proceeds (about $35,000) were used to pay other creditors and to pay ordinary living expenses.

F.2d 1026, 1029 (5th Cir. 1992). "Although evidence of actual intent ... is required to support a finding sufficient to deny discharge, ... actual intent may be inferred from the actions of the debtor and may be proven by circumstantial evidence." *Id*. (internal quotation marks, citations, and brackets omitted).

The mere conversion of non-exempt property to exempt property on the eve of bankruptcy is insufficient to defeat discharge, because the Code permits a debtor to make use of the exemptions to which he is entitled. *See NCNB Texas Nat'l Bank v. Bowyer (Matter of Bowyer)*, 932 F.2d 1100, 1102 (5th Cir. 1991). But, evidence of such conversion is relevant where other evidence proves actual intent to hinder, delay, or defraud creditors. *Id*.

The bankruptcy court did not rely solely on Lowry's conversion of non-exempt property to exempt property during the months preceding bankruptcy in denying discharge. It found, in addition, that Lowry intended to lull Seaboard into refraining from taking any action to execute on its judgment by (1) telling Seaboard that the Colorado property was for sale, (2) giving Seaboard a schedule of assets and liabilities, but providing that the information could be used only in connection with the settlement negotiations (*i.e.*, not in connection with collection efforts), (3) not telling Seaboard that the Colorado property had been sold, (4) failing to inform Seaboard of the change in his financial circumstances as a result of the sale of the Colorado property and disposition of the proceeds from that sale, and (5) failing to tell Seaboard that he had sold or was in the process of selling non-exempt assets or that

- 5 -

he intended to use the proceeds to make principal payments on his home mortgage. The bankruptcy court found that, as a result of Lowry's delaying tactics in the settlement negotiations, and his failure to disclose changes in his financial condition, Seaboard was prevented from obtaining any portion of the $250,000 in assets owned by Lowry at the time of the first settlement offer, which were disposed of and/or converted into exempt property without Seaboard's knowledge.

Lowry contends that no evidence was presented from which the bankruptcy court could have found that his pre-bankruptcy transfers were anything other than legitimate, permitted conversions of non-exempt property to exempt property. He stresses that he did not decide to file bankruptcy until late March 1992, and maintains that any actions he took prior to making that decision cannot form the basis for a denial of discharge.

As our court has noted, "[u]nfortunately, the line between legitimate pre-bankruptcy planning and intent to defraud creditors contrary to section 727(a)(2) is not clear". *Swift v. Bank of San Antonio (Matter of Swift)*, 3 F.3d 929, 931 (5th Cir. 1993). As the finder of fact, however, the bankruptcy court has the primary duty to determine where that line must be drawn. *See* *id*. And, we are not free to overturn that decision unless we are "left with the definite and firm conviction that a mistake has been committed". *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 [105 S. Ct. 1504, 1511] (1985) (citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between

- 6 -

them cannot be clearly erroneous." *Id*. at 574. Considering the entirety of the evidence before the bankruptcy court, we cannot say that its finding that Lowry transferred property with the intent to hinder or delay Seaboard in collecting its judgment is clearly erroneous.

### III.

For the foregoing reasons, the judgment is

**AFFIRMED**.